IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19 CV 80 MOC WCM

| | |
|---|---|
| JILLIAN WEBSTER ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court on the parties' cross motions for summary judgment (Docs. 9, 12), which have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). Following a review of the record, the parties' briefs, and relevant legal authority, the undersigned respectfully recommends that Plaintiff's motion for summary judgment be denied and the Commissioner's motion for summary judgment be granted.

I. Procedural History

On September 12, 2014, Plaintiff filed applications for disability insurance benefits and supplemental security income. Transcript of Administrative Record ("AR"), pp. 273-283. Plaintiff's claims were initially denied on May 1, 2015, and subsequently upon reconsideration. AR pp. 166 & 220-230. Plaintiff thereafter filed a written request for a hearing and a hearing

1

was held on November 29, 2017, where Plaintiff appeared and testified. AR pp. 37-66. Plaintiff was represented by counsel at the hearing.

On January 16, 2018, the Administrative Law Judge ("ALJ") issued an unfavorable decision. AR pp. 15-31. The Appeals Council denied Plaintiff's request for review of that decision on January 9, 2019. AR pp. 1-7.

On March 8, 2019, Plaintiff filed the instant action. Doc. 1. Accordingly, Plaintiff exhausted his[1] administrative remedies before timely filing this action and the ALJ's decision is the Commissioner's final decision for purposes of judicial review. See 20 C.F.R. § 404.981.

## II. The Five-Step Process

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. In this process, the Commissioner considers each of the following: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has

---

1 In his Memorandum in Support of Motion for Summary Judgment, Plaintiff states that he "is transgender and uses male gender expression, including male pronouns." Doc. 1, p. 1 n. 1.

a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or exceed the severity of one or more of the impairments listed in Appendix I of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520, 416.920; Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001); Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (per curiam).

The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

### III. The ALJ's Decision

The ALJ determined that Plaintiff had the severe impairments of "bipolar depression; anxiety disorder and PTSD symptoms." AR p. 21. At step three of the sequential analysis, the ALJ found, *inter alia*, that Plaintiff had moderate limitation in "concentrating, persisting, or maintaining pace." AR p. 23. The ALJ further found that Plaintiff had the RFC to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: [he] would be limited to simple, routine, repetitive jobs with no more than occasional

interaction with co-workers, supervisors and the public.

AR p. 24.

Utilizing this RFC, the ALJ found that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" such that Plaintiff was not disabled through January 16, 2018 (the date of the ALJ's decision). AR p. 30.

## IV. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006) (quoting Mastro, 270 F.3d at 176). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether

4

the Commissioner's decision that he is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

## V. Analysis

### A. Plaintiff's Allegations of Error

Plaintiff raises three issues in his Motion for Summary Judgment. Plaintiff argues that the ALJ did not adequately account in the RFC for Plaintiff's moderate limitation in concentration, persistence, and pace. Relatedly, Plaintiff contends that the ALJ improperly rejected Plaintiff's hearing testimony. Finally, Plaintiff argues that the ALJ failed to identify and resolve apparent conflicts between the testimony of the vocational expert ("VE") and the descriptions of the representative occupations.

### B. Concentration, Persistence, and Pace

Plaintiff argues that his RFC restriction to "simple, routine, repetitive jobs with no more than occasional interaction with co-workers, supervisors and the public" does not adequately account for his moderate limitation in concentration, persistence, and pace. Specifically, Plaintiff contends that under Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), "the ALJ must either adopt a limitation that addresses a claimant's ability to stay on task or explain what such a limitation is unnecessary" and that the "ALJ has left the Court to guess [Plaintiff's] ability to stay on task." Doc. 10, pp. 12 & 15.

In Mascio, the Fourth Circuit considered whether remand was

5

Case 1:19-cv-00080-MOC-WCM   Document 17   Filed 01/16/20   Page 5 of 18

warranted where a claimant's moderate limitations in concentration, persistence, and pace were not addressed in the development of the claimant's RFC. The Court stated:

> [W]e agree with other circuits that an ALJ does not account "for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir.2011) (joining the Third, Seventh, and Eighth Circuits). As Mascio points out, the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace. Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. See id. at 1181. But because the ALJ here gave no explanation, a remand is in order.

Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)

In sum, "Mascio stands for the rule that an ALJ must either adopt a limitation that addresses a claimant's ability to stay on task or explain why such a limitation is unnecessary, even in the face of the claimant's CPP limitations." Curry v. Berryhill, No. 1:17-CV-00317-RJC, 2019 WL 1331749, at *3 (W.D.N.C. Mar. 25, 2019) citing Grant v. Colvin, No. 1:15-CV-00515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016); accord Mann v. Berryhill, No.

1:17-CV-38-RJC, 2018 WL 1566337, at *7 (W.D.N.C. Mar. 30, 2018) (discussing Mascio, stating that "[a]n ALJ may still, however, assign claimants limitations to merely simple, routine tasks or unskilled work in the wake of a moderate CPP limitation. The ALJ must simply explain why further limitations in the RFC were not warranted."); Dannheim v. Berryhill, 5:17-cv-216-MOC, 2018 WL 4954080, at * 6 (W.D.N.C. Oct. 12, 2018) ("Mascio does not mandate that the ALJ must include an 'on-task' limitation in every case involving moderate difficulties in concentration, persistence, or pace.").

Here, the ALJ determined that Plaintiff had moderate difficulties with respect to concentration, persistence, and pace at step three of the sequential analysis. AR p. 23. Later, when developing Plaintiff's RFC, the ALJ concluded that while Plaintiff's "severe mental impairments are likely to cause some limitations, they would not preclude the performance of all work." AR p. 27. After considering Plaintiff's past work history, his reported activities of daily living, and medical records, the ALJ found Plaintiff was "limited to simple, routine, repetitive jobs with no more than occasional interaction with the public, co-workers and supervisors." AR p. 27.

Thus, because the ALJ concluded that Plaintiff had moderate limitations in concentration, persistence, and pace but did not include additional limitations in Plaintiff's RFC, the question here is whether the ALJ's narrative explanation for omitting additional limitations is sufficient. See Dannheim,

7

Case 1:19-cv-00080-MOC-WCM Document 17 Filed 01/16/20 Page 7 of 18

2018 WL 4954080, at * 4 ("while the ALJ may find that no limitations are required, an explanation is necessary."); Robinson v. Berryhill, No. 3:16-cv-866-GCM, 2018 WL 1718262, at * 2 (W.D.N.C. April 9, 2018) ("[i]f the limitation in concentration, persistence, and pace does not actually translate into a limitation in RFC, the ALJ may limit the claimant to merely simple, routine tasks or unskilled work, but must explain why a further limitation is not needed.").

In considering Plaintiff's mental limitations, the ALJ recognized that the "record [showed] evidence of social anxiety and some decreased concentration." AR p. 27. The ALJ went on to explain that Plaintiff indicated he "could handle [his] own personal care, take medications, care for pets, perform household chores, prepare daily meals, watch television, shop, and use the internet." Id. Further, Plaintiff reported the ability to talk on the telephone with friends and that friends and family would visit him. The record confirms that Plaintiff self-reported the ability to care for pets, had no problems attending to his own personal care needs, could prepare food and clean the house, "watch tv all day," and talk on the phone.² Additionally, and as repeatedly noted by the ALJ when

---

2 See AR pp. 321-328 (September 23, 2014 Adult Function Report); 356-363 (October 8, 2015 Adult Function Report). The ALJ also stated that "by the claimant's own reports and testimony, [he] has experienced these symptoms since childhood, and continued to work on a regular basis, at substantial gainful activity levels and semi-skilled vocational levels throughout 2010." AR p. 27. During the November 29, 2017 hearing, Plaintiff did confirm that he had experienced problems with anxiety since childhood. AR p. 47. However, Plaintiff also testified that his anxiety got worse in

8

developing Plaintiff's RFC, Plaintiff's mental status exams ("MSEs") were consistently within normal limits.[3]

The undersigned is persuaded that the ALJ's narrative explanation is sufficient to pass muster under Mascio and that remand is not required for a more explicit discussion of Plaintiff's ability to stay on task. See Ponder v. Berryhill, 1:15-cv-289-RJC, 2017 WL 1246350, at * 4 (W.D.N.C. March 31, 2017) ("Although the ALJ did not explicitly use the words 'stay on task,' his analysis and citations to the record clearly demonstrate that the ALJ's RFC is supported by substantial evidence, including the ability to stay on task for a full workday. Among other things, the ALJ concluded that Plaintiff's activities of daily living supported the ALJ's RFC determination…"); Cox v. Berryhill,

---

his twenties, and that he quit multiple jobs due to mental health issues. AR pp. 45-47. Further, as the ALJ recognized, Plaintiff has not engaged in substantial gainful activity since his alleged disability onset date. AR p. 21.

3 See AR p. 26, 27, & 28. See also e.g. AR pp. 923-925 (August 6, 2015 psychiatric progress note indicating judgment, insight, cognition, thought content, and perception within normal limits and no impairments regarding memory, attention, or concentration noted); pp. 868-922 (September 8, 2015 through April 13, 2017 psychiatric progress notes showing same); pp. 856-861 (September 18, 2017 psychiatric follow up recording that Plaintiff's anxiety was controlled on medication, his depressive symptoms had improved and sleep was adequate, and that on MSE, Plaintiff made average eye contact, exhibited clear speech, logical thought process, was within normal limits with respect to thought content, insight, and judgment, and had no impairment with respect to the ability to make reasonable decisions); p. 440-441 (November 21, 2013 psychiatric service note reflecting linear, logical, and goal directed thought processes, intact cognition "although concentration subjectively increased."); pp. 431-437 (psychiatric progress notes from February 6, 2014 through July 14, 2014 showing cognition intact with linear, logical, and goal directed thought process); p. 522 (March 17, 2015 treatment note reflecting "grossly normal" cognition).

3:17-cv-349-FDW, 2018 WL 3636577, at * (W.D.N.C. July 31, 2018) ("Where the ALJ does not include a limitation for the claimant's ability to stay on task, but his discussion of the record allows for the Court to meaningfully review the ALJ's conclusion, remand is not appropriate.").

### C. Plaintiff's Testimony

Plaintiff also argues that the ALJ failed to give "specific reasons" for the weight he assigned to Plaintiff's symptom testimony. Doc. 19, p. 23. Plaintiff contends that "it is not enough for an ALJ to simply list evidence he thinks shows [Plaintiff] is not credible. Instead, he 'must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion." Doc. 10, p. 23 (quoting Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir 2018)) (emphasis in Woods).

The Social Security regulations set out a two-step process for considering Plaintiff's statements regarding the limiting effects of his impairments. See 20 C.F.R. §§ 404.1529, 416.929; Craig v. Chater, 76 F.3d 585, 593-96 (4th Cir. 1996); SSR 16-3P, 2017 WL 5180304.[4] First, the ALJ determines whether

---

4 SSR 16-3p rescinded SSR 96-7p and applies to ALJ decisions made on or after March 28, 2016. SSR 16-3p, 2017 WL 5180304, at *1 (2017). As noted, the ALJ's decision in this case was made on January 16, 2018. AR pp. 15-31. As such, SSR 16-3p applies. See Oliphant v. Berryhill, No. 3:17-CV-00049-MR, 2018 WL 1368363, at *3 n.2 (W.D.N.C. Mar. 16, 2018) ("[T]he Court applies the regulations in effect at the time of the ALJ's decision."). SSR 16-3p eliminated the term "credibility" because the regulations do not use that term. 2017 WL 5180304, at *2. The intent of the change

10

objective medical evidence shows that a medical impairment exists that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. §§ 404.1529(b), 416.929(b); Craig, 76 F.3d at 594. "If so, the ALJ proceeds to the second step and evaluates the intensity and persistence of the symptoms to determine whether they limit the claimant's capacity for work." Christensen v. Saul, 1:19cv68-MOC, 2019 WL 6359764, at * 3 (W.D.N.C. November 27, 2019).

"At this second step, the ALJ must consider all of the evidence in the record, such as medical signs, laboratory findings, medical opinions, and factors listed in the regulations that relate to the reliability of a claimant's statements, such as the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of medication; treatment of symptoms other than with medication; any measures used to relieve the symptoms; and any other relevant factors." Christensen, 2019 WL 6359764, at * 3 (citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p, 2017 WL 5180304, at **7-8). An ALJ will consider whether there are inconsistencies or conflicts in the evidence and will determine the limiting effects of a claimant's symptoms based on whether

---

was to clarify that a subjective symptoms evaluation is not an examination of a claimant's character. Id.

alleged limitations "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

During the November 29, 2017 hearing, Plaintiff testified that his anxiety made it "hard for me to leave the house unless somebody's with me," and that he gets "panicky" if he must go somewhere by himself. AR pp. 46-47; 52. Plaintiff further testified that he gets "really depressed, to the point where I stay in bed for days, and won't come out of my room" and that he has trouble concentrating because he feels like people are talking about him. AR pp. 50-51. He stated that he "make[s] [him]self" clean the house, do the laundry and dishes, cook, and let out the dogs. AR p. 62.

In considering Plaintiff's testimony, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause" Plaintiff's alleged symptoms, but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…." AR p. 26. In explaining this finding, the ALJ cited Plaintiff's past work history, activities of daily living, and medical records. AR p. 27.

As discussed above with respect to Plaintiff's limitations in concentration, persistence, and pace, substantial evidence supports the ALJ's analysis of Plaintiff's medical records and self-reported daily activities.

12

Accordingly, "the ALJ properly evaluated the evidence and built an accurate and logical bridge between that evidence and his conclusion that the Plaintiff's statements about the intensity, persistence, and limiting effect of [his] symptoms were inconsistent with the evidence." Millan v. Saul, 3:18-cv-638-MR, 2019 WL 5957217, at * 5 (W.D.N.C. November 12, 2019).

### D. Conflict Between the VE Testimony and the DOT

The Dictionary of Occupational Titles ("DOT") and its companion publication, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, "are Social Security Administration resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations." Pearson v. Colvin, 810 F.3d 204, 205, n. 1 (4th Cir. 2015). "[A]n ALJ must ensure that any 'apparent' conflicts between [these sources] and the VE's testimony are reasonably resolved." Thomas v. Berryhill, 916 F.3d 307, 313 (4th Cir. 2019). Here, the VE identified cleaner; laundry worker; park worker; mail clerk or sorter, non-postal service; linen grader/sorter; and folder as representative occupations that an individual with Plaintiff's limitations could perform. AR p. 30.

"The DOT's Reasoning Development scale has six levels: Level 1 requires the least reasoning ability, and Level 6 requires the most reasoning ability." Richardson v. Berryhill, 5:17-cv-173-RJC-DSC, 2019 WL 1354042 at * 3

13

(W.D.N.C. March 25, 2019). The job of mail clerk or sorter requires a Reasoning Level of 3. DICOT 209.687-026, 1991 WL 671813. All the other jobs identified by the VE require a Reasoning Level of 2. DICOT 919.687-014, 1991 WL 687897 (Cleaner II); DICOT 361.685-018, 1991 WL 672987 (Laundry Worker II); DICOT 406.687-010, 1991 WL 673342 (Landscape Specialist); DICOT 361.687-022, 1991 WL 672993 (Linen Grader); DICOT 369.687-018, 1991 WL 673072 (Folder).

Reasoning Level 2 requires the ability to "[a]pply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." Richardson, 2019 WL 1354042, at * 3. (citing DOT, App. C, 1991 WL 688702, emphasis added by Richardson court). Reasoning Level 3 requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." 1991 WL 671813; 1991 WL 688702. Here, Plaintiff argues that his "limitation to performing simple, routine, repetitive jobs appears to conflict with the reasoning requirements of all six…jobs, and because the vocational witness did not offer any explanation for this apparent conflict and the ALJ failed to identify or resolve the apparent conflict, the matter should be remanded." Doc. 10, pp. 22-23.

This argument, however, is not supported by recent authority. In Lawrence v. Saul, 941 F.3d 140, 143 (4th Cir. 2019), the Fourth Circuit found that there was no apparent conflict between an RFC providing that a claimant could perform "simple routine repetitive tasks of unskilled work" and "Level 2's notions of 'detailed but uninvolved…instructions' and tasks with 'a few [ ] variables.'" The Court explained:

> To begin with, detailed instructions are, in the main, less correlated with complexity than with length. Instructions often include many steps, each of which is straightforward. Driving directions are a good example: they may prescribe many turns, but the turns are generally easy to make, and the route rarely changes, making the directions simple, routine, and repetitive. Further, there is no conflict between "simple" and "uninvolved" instructions, as both connote instructions that "are not complicated or intricate." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (citing Webster's Third New Int'l Dictionary 1191, 2499 (2002)). Finally, "routine" and "repetitive" tasks may involve a few variables, just as driving directions may vary if a road is closed.

Id. at 143.

See also King v. Saul, 787 Fed. App'x. 170, 171 (4th Cir. Dec. 10, 2019) ("We find that *Lawrence* is controlling in this case and, thus, there was no apparent conflict between a limitation to performing only simple routine repetitive tasks and a position requiring the ability to understand and carry out detailed, but uninvolved, instructions.") (unpublished); Lambert v. Berryhill, 5:18-cv-28-RJC-DSC, 2019 WL 1354038, at 6 (W.D.N.C. March 26, 2019) (collecting

15

cases); Millan v. Saul, No. 3:18-cv-638-MR, 2019 WL 5957217, at * 6 (W.D.N.C. Nov. 12, 2019); Doll v. Saul, 1:19-cv-85-MOC, 2019 WL 5866156, at * 4 (W.D.N.C. Nov. 8, 2019).

Thus, in accordance with Lawrence, there is no apparent conflict between the VE's identification of jobs requiring a Reasoning Level of 2 and Plaintiff's RFC limiting him to "simple, routine, repetitive jobs." AR p. 24.

"Courts have also held that a GED reasoning level of 3 does not preclude the performance of [simple, routine, and repetitive tasks]." Doll, 2019 WL 5866156, at * 4 (collecting cases). However, even if an apparent conflict existed between a job requiring a Reasoning Level of 3 and Plaintiff's RFC limitation to "simple, routine, repetitive jobs," the ALJ's failure to resolve such a conflict in this case would be harmless error because the VE also identified other jobs that Plaintiff could perform and for which an apparent conflict did not exist. Since Plaintiff "can perform at least one job that exists in significant numbers in the national economy, the ALJ properly concluded that Plaintiff is not disabled under the Act." Richardson, 2019 WL 1354042, at * 4 (citing Guiton v. Colvin, 546 F. App'x 137, 142 (4th Cir. 2013)); see also Bavaro v. Astrue, 413 F. App'x 382, 384 (2d Cir. 2011) (finding that the Commissioner need show only one job to meet her burden at Step Five).

16

Case 1:19-cv-00080-MOC-WCM Document 17 Filed 01/16/20 Page 16 of 18

## VI. Recommendation

Considering the foregoing, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment (Doc. 9) be denied and that the Commissioner's motion for summary judgment (Doc. 12) be granted.

Signed: January 16, 2020

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal.  See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).